Scarlet R. Smith #15024
ssmith@strongandhanni.com
Jordan T. Greenburg #18393
jgreenburg@strongandhanni.com
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, UT 84111
Telephone: (801) 532-7080

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TROLLEY SQUARE VENTURES, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>TROLLEY CORNERS CENTER LLC, a Utah limited liability company<br><br>    Defendant, | **COMPLAINT AND JURY DEMAND**<br><br>Case No.<br><br>Judge |

COMES NOW Plaintiff TROLLEY SQUARE VENTURES, LLC ("Plaintiff" or "Trolley Square"), by and through undersigned counsel, the law firm of Strong & Hanni, hereby submits this Complaint and alleges against Defendant Trolley Corners Center LLC ("Trolley Corners"), as follows:

### PARTIES

1.      Plaintiff is a Utah limited liability company formed under the laws of Utah and does business in Utah. Plaintiff is located at 630 East South Temple, Salt Lake City, UT 84102.

1

2.      Defendant is a Utah limited liability company formed under the laws of Utah and does business in Utah. Defendant is located at 4422 Century Drive, Murray, UT 84123.

3.      Defendant owns and operates a building named "Trolley Corners" (the "Building"), located at 515 S 700 E, Salt Lake City, Utah 84111 (Parcel no. 16053510390000).

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under Title 28, Sections 1331 and 1367 of the United States Code. Additionally, this Court has subject matter over this action under Title 28 Section 1338(a) and Title 15 Section 1121.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims arise from a common nucleus of operative facts alleged in Plaintiff's federal claims.

6.      This Court has and may, consistent with due process, exercise personal jurisdiction over Defendant under Utah Code § 78B-3-201, because Defendants principal place of business is in Utah, have transacted business in this District, the actions giving rise to this lawsuit have occurred in this District, and Defendants have caused damages to Plaintiff in this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 and because a substantial part of Defendant's acts and omissions giving rise to Plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS

*Plaintiff's History and Intellectual Property*

8.      Trolley Square is one of Utah's most popular attractions and shopping centers. For decades, Trolley Square has offered consumers unique shopping, dining, and entertainment in a charming, historic atmosphere.

9.      In fact, "Trolley Square" has become a household name in which the consuming public easily recognizes as a specific and unique shopping center located between 600 and 700 East and 500 and 600 South of Salt Lake City, Utah.

10.      Trolley Square was registered as a historic site by the State of Utah in 1973 and added to the National Register of Historical Places in 1996.

11.      Trolley Square is also home to the iconic 50,000-gallon water tower ("Water Tower"), which was built in 1908 and converted into a Trolley Square landmark in 1972. From 1972 to the present, the Water Tower, with its 6,000 miniature lights and an observation deck, has become a well-known symbol and trademark of Trolley Square by the consuming public.

12.      Plaintiff has been using the TROLLEY SQUARE mark since at least January 1, 1972, in connection with its shopping center and other services such as real estate management and leasing.

13.      Trolley Square is the owner of pending U.S. Trademark Application No. 99872840 for the trademark TROLLEY SQUARE in connection with leasing of shopping mall space, shopping center services, namely, rental of shopping center space, and real estate management services relating to shopping centers. A true and correct copy of the application is attached as Exhibit 1.

14.      Trolley Square is the owner of pending U.S. Trademark Application No. 99790047 for the service mark THERE'S ONLY ONE TROLLEY SQUARE in connection with real estate

3

management services for retail centers, leasing of retail center space, real estate management services, and shopping center services. A true and correct copy of the application is attached herein as Exhibit 3.

15. Plaintiff is the sole owner of the trademarks TROLLEY SQUARE and THERE'S ONLY ONE TROLLEY SQUARE (collectively, "TROLLEY SQUARE Marks" or "Marks").

16. Plaintiff has extensive common law rights in the TROLLEY SQUARE Marks in connection with retail stores, restaurants, events, and leasing commercial space. Plaintiff has continuously used TROLLEY SQUARE since at least January 1, 1972, in connection with the aforementioned goods and services in the United States for more than 50 years.

17. Plaintiff advertises and offers its goods and services to the public under the TROLLEY SQUARE Marks.

18. The goods and services that Plaintiff offers under the TROLLEY SQUARE Marks are of high quality, and the consuming public recognizes the high quality of goods and services bearing the TROLLEY SQUARE Marks and associates the goods and services with Plaintiff.

19. Over the last half-century, Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting its goods and services under the TROLLEY SQUARE Marks.

20. Due to Plaintiff's continuous efforts and longstanding use of the TROLLEY SQUARE Marks, these Marks have come to signify the high quality of Plaintiff's goods and services and acquired reputation and goodwill exclusively belonging to Plaintiff.

21. Plaintiff's TROLLEY SQUARE Marks have become widely known, distinctive, and famous throughout the United States. Consumers and the general public closely identify the

4

TROLLEY SQUARE Marks with Plaintiff, Plaintiff's goods and services, and represent substantial and valuable goodwill.

22. Plaintiff's TROLLEY SQUARE Marks are distinctive to both consumers and the public generally.

23. Plaintiff owns and operates the domain name at https://www.trolleysquare.com/ ("Plaintiff's Domain") and operates its website at that address. Plaintiff's Domain serves as a source identifier and enables consumers to locate Plaintiff's website. Through its website, Plaintiff promotes and offers its goods and services under the TROLLEY SQUARE Marks. For example, Plaintiff's website promotes Plaintiff's leasing services to the public.

24. Plaintiff further owns and operates various social media accounts, including:

   a. Verified Facebook Page – Trolley Square (facebook.com/TrolleySquareUT/);

   b. Verified Instagram Account – @trolley_square (Instagram.com/trolley-square/);

   c. X Account – @TrolleySquareUT (x.com/TrolleySquareUT).

25. As a result of Plaintiff's TROLLEY SQUARE Marks distinctiveness and widespread use and promotion throughout the United States, Plaintiff's TROLLEY SQUARE Marks are famous trademarks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the Defendant's infringing acts as alleged herein.

***Defendant's Infringement on Plaintiff's TROLLEY SQUARE Marks and Actual Consumer Confusion***

26. Defendant adopted the company name, "Trolley Corners Center, LLC" (the "Company Name"), on January 10, 2006.

27. Before Defendant adopted its Company Name, the name "Trolley Corners" had been previously used in connection with a movie theater and cinema, and that use of "Trolley Corners" had been abandoned before Defendant adopted its Company Name.[1]

28. Defendant's Building is located near Trolley Square.

29. Upon information and belief, Defendant began using the name "Trolley Corners" for a sign (the "Sign") on the Building on or about April 1, 2010, with the intent to profit off of the goodwill associated with Plaintiff's TROLLEY SQUARE Marks.

30. Upon information and belief, Defendant authorized CBRE to list the Building's available units to lease with the "Trolley Corners" name as early as June 13, 2024.[2]

31. Upon information and belief, outside of the Sign, Defendant has invested little to no funds into the name "Trolley Corners." Defendant has no website with the domain "Trolley Corners" or "Trolley Corners Center." A true and correct copy of available domain names from GoDaddy is attached herein as Exhibit 4.

32. Upon information and belief, Defendant has no social media presence whatsoever with the name "Trolley Corners" or "Trolley Corners Center."

33. "Trolley Corners" is not a searchable location on Google Maps. In fact, when "Trolley Corners" is input into a Google Maps search, Trolley Square populates, further inducing consumer confusion as to the association between Plaintiff and Defendant.

---

[1] *See e.g.*, Exhibit 5.

[2] *See* metadata for the webpage for the date: https://www.cbre.com/properties/properties-for-lease/flexindustrial/details/US-SMPL-6886/trolley-corners-515-south-700-east-salt-lake-city-ut-84102.

34.     It has been brought to Plaintiff's attention that consumers have actually confused Defendant as Plaintiff.[3]

35.     Upon information and belief, due to Defendant's infringement on Plaintiff's TROLLEY SQUARE Marks, consumers have begun to wrongly associate Defendant's services with that of Plaintiff's, including but not limited to Defendant's tenants, EOS Fitness ("EOS") and Tucci's Cucina Italiana ("Tucci's).

36.     For example, on TikTok, EOS is identified as "EOS Fitness Trolley Square," with no mention of "Corners." Numerous videos on Tiktok demonstrate that Defendant's tenant is often mistaken as belonging to Plaintiff.[4] *See e.g.*,



---

[3] *See* Exhibits 6 & 7.
[4] https://www.tiktok.com/discover/eos-fitness-trolley-square-utah.

37.     EOS's website further encourages the consuming public to confuse Defendant as belonging to or associated with Plaintiff by wrongfully misrepresenting EOS as being located inside Trolley Square.[5] *See e.g.,*



38.     A diner wrote the following restaurant review of Tucci's, which wrongfully confuses Plaintiff with Defendant.[6] *See e.g.,*

---

[5] https://www.eosfitness.com/gym/search/list.
[6] https://www.facebook.com/groups/530940657042702/posts/2827830370687041/.



**Kyle K.**
Salt Lake City, UT
🖼 87    💬 231    📷 71

★★★☆☆    May 5, 2014

⊡ ROTD Oct 7, 2014

Tucci's, across the street from Whole Foods on 7th East, looks sort of like it should be in **trolley** square -- a family-friendly Italian restaurant with a massive facade, approachable logo, and huge menu. But look a little deeper and you see something more than the Olive Garden ordinary. First, Tucci's has a full bar (very nice) and a decent wine and cocktail list. So while there might be something for kiddo's to eat, it's not just for family feasts.
Second, the staff is very friendly. Maybe our waiter was even a bit _too_ friendly, with his near constant big smile, his "thank yous" every time he saw us, and his repeat visits to our table to see how the food was. Of course, over-friendly beats under-friendly every time, but we were beginning to wonder how authentic the friendliness could be.
Third, the menu is full of interesting dishes, like the "Lucia" my wife ordered (Salmon pasta with pinenuts and tomatoes in a tomato cream cause) and the Gratino (an uber-eggy, Italian warm custard dish with toasted almonds and caramel).
Fourth, they have outdoor seating on a fairly nice patio, even though it may front noisy 7th East.

So why only 3 stars?
While my wife's Lucia was really tasty, my Penne Alle Vodka (italian Sausage with peppers over penne pasta and in a "spicy tomato vodka sauce") was pretty much just sausage and peppers over pasta. There didn't seem to be much of a "spicy tomato vodka sauce" at all, but rather just oodles and oodles of (not noodles, but) what looked like sausage oil as the sauce. I am a hungry guy, but I couldn't finish the pasta covered in all that grease.
Their side salads, served as appetizers, were a really great size, and had a nice balance of different greens, but I felt mine were wilted (maybe the dressing had just been applied too early?). The wife didn't agree. Also, our server put fresh ground pepper on the salads. But the pepper mill was set way too coursely, resulting in a "peppercorn dump" on the salad. I could hardly taste anything but pepper, and I had just a few seconds' worth of grinding. Once again, the wife didn't agree with me, but it seemed offputting. Maybe it's just because no starter salad can be as good as Cannella's down the street.
Rather than crusty, dense, Italian-style bread, Tucci's serves "rustic" Italian loaves. Great that they're served hot, but when the loaves are cut, they're smashed down. And they just sort of taste like run of the mill wheat bread to me.

I probably ordered poorly, and none of my other gripes would seriously stop me from trying them again (which we probably will -- their brunch menu looks particularly good). So if you want Italian,

...



Order takeout or delivery ↗

tuccisslc.com    ↗

(801) 533-9111    📞

**Get Directions**
515 S 700th E Ste 1D Salt Lake City, UT 84102    ◈

**Message the business**    💬

✎ Suggest an edit

**You Might Also Consider**
Sponsored ⓘ



**Ve La Thai Fine Dining Restaurant & Wine**
★★★★☆ 4.1 (67 reviews)
"Went with friends - ordered four completely different meals to share and it was..." **read more**



**Butcher's Chop House & Bar**
★★★☆☆ 3.6 (635 reviews)
"We came here at 11pm after landing very late in Salt Lake and driving into town...." **read more**

39.     The preceding examples of actual confusion of association between Plaintiff and Defendant particularly harms Plaintiff's rights in its TROLLEY SQUARE Marks because it tarnishes the goodwill Plaintiff has spent decades developing in its TROLLEY SQUARE Marks.

40.     The actual confusion of association of Tucci's and EOS, hurts the goodwill and reputation of Plaintiff's tenants, including but not limited to the Old Spaghetti Factory, Orangetheory Fitness, CorePower Yoga, and Momentum Climbing.

41.    The Old Spaghetti Factory is an Italian restaurant inside Trolley Square and has been at that location since 1973.[7] For over the last fifty years, the Old Spaghetti Factory has maintained a positive reputation.[8] *See e.g.,*



42.    Defendant's tenant, Tucci's, which has already been confused as belonging to Plaintiff, is also an Italian restaurant. Due to the fact that the Old Spaghetti Factory and Tucci's both offer only Italian dishes, further consumer confusion associating Tucci's as belonging to Plaintiff and/or being related to the Old Spaghetti Factory is even more likely.

43.    The Old Spaghetti Factory is more popular and held in higher regard than Tucci's, so the wrongful association between Tucci's and Plaintiff and the Old Spaghetti factory dually injures Plaintiff's reputation and goodwill in the TROLLEY SQUARE Marks.

---

[7] https://www.trolleysquare.com/the-old-spaghetti-factory.
[8] https://share.google/Wlj0OY7I9S44Buqn2.

10

44.     For example, on Yelp, a popular website for customer reviews, Tucci's low reviews threaten the high quality of Plaintiff's goodwill in the TROLLEY SQUARE Marks.[9] *See e.g.,*



45.     Plaintiff's "Athletic Row" includes the following fitness studios and gyms: CorePower Yoga, Orangetheory Fitness, and Momentum Climbing (collectively the "Gyms"). The Gyms are popular and maintain strong reputations.[10]

46.     Defendant's tenant, EOS, is also a fitness facility and offers similar services to Plaintiff's Gyms such as yoga classes, "HIIT" classes, and other small group training sessions.

---

[9] https://www.yelp.com/biz/tuccis-cucina-italiana-salt-lake-city-2.
[10] https://share.google/OARzsr8SpI4SbwvrK; https://share.google/i7XHr88ThNQ5rDm0O; https://share.google/K80BOA969PzYqQpqO.

47.     However, Plaintiff's Gyms are held in higher regard than EOS, so any confusion of EOS belonging to or being associated with Plaintiff or its Gyms, injures Plaintiff's and the Gym's goodwill and reputation.

48.     For example, EOS's low Yelp reviews threaten the high quality associated with Plaintiff's TROLLEY SQUARE Marks.[11] *See e.g.*,



49.     Defendant's use of "Trolley" has already induced and will continue to induce consumers to associate Plaintiff with Defendant and/or Defendant's business, goods, and/or services. Accordingly, the negative reviews that consumers post online about Defendant, Defendant's tenants, and/or Defendant's goods and services injures the goodwill and reputation that Plaintiff has cultivated in its TROLLEY SQUARE Marks.

---

[11] https://www.yelp.com/biz/e%C5%8Ds-fitness-salt-lake-city-3.

50. Upon information and belief, Defendant, with full knowledge of Plaintiff's TROLLEY SQUARE Marks intended to, and continue to, trade on the decades' long good will and reputation of Plaintiff's TROLLEY SQUARE Marks by creating a false association with Plaintiff.

51. Defendant misled, and continue to confuse and mislead, the public into assuming an affiliation or connection between Plaintiff and Defendant and/or Defendant's goods and services.

52. Defendant's persistent imitation, false association, infringing derivative, reproduction, and other unauthorized use of the TROLLEY SQUARE Marks causes irreparable injury to Plaintiff, including injury to its business reputation.

53. Upon information and belief, Defendant continues to pass off its goods and services within U.S. commerce as those of Plaintiff by Defendant's aforementioned unlawful actions which include misrepresentations to the consuming public that Defendants' actions, advertising, and related goods and services emanate from or are associated with Plaintiff.

54. Defendant's unlawful actions result in irreparable harm and injury to Plaintiff. Among other harms, it:

    a. Deprives Plaintiff of its absolute right to determine the manner in which its goods and services are presented to consumers and the general public;

    b. Deceives consumers and the public as to the origin and sponsorship of Defendant's goods and services are those of Plaintiff;

    c. Wrongfully trades upon Plaintiff's reputation, goodwill, and exclusive rights in its

    d. intellectual property, namely the TROLLEY SQUARE Marks; and

13

e. To the extent that that Defendant's goods and services are or may be of inferior quality to that of Plaintiff's, the quality difference irreparably harms and injures Plaintiff's reputation.

55. Plaintiff is entitled to an injunction restraining Defendants, their officers, agents, servants, employees and attorneys, and all persons acting in concert with them, from engaging in any further actions in violation of Plaintiff's rights.

56. Plaintiff is further entitled to recover from Defendant damages, including treble damages, pre- and post-judgment interest, and attorneys' fees and costs Plaintiff has sustained, and will sustain, and any gains, profits, and advantages obtained by Defendant as a result of Defendant's actions as alleged herein.

57. At present, the amount of the aforementioned damages, gains, profits, and advantages cannot be fully ascertained by Plaintiff

### CLAIM FOR RELIEF

### FIRST CAUSE OF ACTION:
**Trademark Infringement and Unfair Competition under 43(a) of the Lanham Act**

58. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully stated herein.

59. Plaintiff owns valid and legally protectable marks, namely the TROLLEY SQUARE Marks.

60. Plaintiff's TROLLEY SQUARE Marks are inherently distinctive and entitled to protection because the Marks identify Plaintiff as the source for goods and services bearing the TROLLEY SQUARE Marks, and the Marks distinguish Plaintiff's goods and services from those of others.

14

61.    Further, the TROLLEY SQUARE Marks are "famous" within the meaning of Section 43(c) of the Lanham Act.

62.    Plaintiff began using the TROLLEY SQUARE Marks in commerce no later than January 1, 1972, and has continually used the Marks in connection with its goods and services in the United States for more than 50 years.

63.    Plaintiff never licensed nor granted permission to Defendant to use its TROLLEY SQUARE Marks.

64.    Upon information and belief, Defendant began using a name confusingly similar to Plaintiff's TROLLEY SQUARE Marks in the same or similar trade channels as early as June 13, 2024 by unlawfully utilizing and otherwise depicting the TROLLEY SQUARE Marks on a third-party's real estate listing website to promote its commercial real estate units available to lease.

65.    Defendant's unlawful use of the TROLLEY SQUARE Marks is highly likely to cause consumer confusion in U.S. commerce by creating a false impression that Defendant is affiliated with or otherwise connected to Plaintiff.

66.    Upon information and belief, Defendants have made subsequent unauthorized use of the TROLLEY SQUARE Marks, or a derivative of the Marks, and creates a false designation of origin in commerce in connection with the distribution, sale, offering for sale, or advertising of goods and services in connection with its commercial real estate and leasing services.

67.    Upon information and belief, Defendant unlawfully uses and depicts the confusingly similar designation "Trolley Corners" to trade on Plaintiff's goodwill in the Marks and favorable reputation to increase their own sales and profits.

15

68.    Defendant's unauthorized use of "Trolley" in its building name and building signage has caused actual confusion and likely will continue to cause a high likelihood of confusion concerning Defendant's affiliation or connection to Plaintiff, as well as confusion regarding Plaintiff's sponsorship, approval, or lack thereof, for Defendant's services depicting the TROLLEY SQUARE Marks.

69.    Defendant's use and depictions of Plaintiff's TROLLEY SQUARE Marks, further encourages consumers to wrongfully assume an affiliation between Plaintiff and Defendant.

70.    The likelihood of confusion is particularly high because Defendant's trade channels (leasing real property) and target consumers (tenants) are extremely similar, if not the same, to Plaintiff's.

71.    As described herein, Defendant's unlawful actions and infringement on Plaintiff's TROLLEY SQUARE Marks wrongly trades upon and irreparably injures Plaintiff's reputation, goodwill, and exclusive rights in its Marks.

72.    Accordingly, Plaintiff is entitled to all rights and remedies available under the Lanham Act and applicable federal law, including but not limited to injunctive, monetary, equitable, and/or such other and further relief as the Court deems appropriate.

## SECOND CAUSE OF ACTION:
### False Designation of Origin / Passing Off Under Section 43(a) of the Lanham Act

73.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully stated herein.

74.    Plaintiff is the owner of valid and legally protectable marks, namely the TROLLEY SQUARE Marks.

16

75.    Plaintiff's TROLLEY SQUARE Marks are inherently distinctive because the TROLLEY SQUARE Marks automatically signal to consumers that those Marks refer to Plaintiff and/or Plaintiff's brand and are entitled to protection.

76.    Plaintiff has continually used the TROLLEY SQUARE Marks in connection with its goods and services in the United States for more than 50 years.

77.    Defendants unlawfully use Plaintiff's TROLLEY SQUARE Marks in Defendant's marketing and advertising to promote Defendant's goods and services to the public.

78.    Defendant's actions and infringements as alleged herein cause a high likelihood of confusion among consumers through deceiving the public to believe that Defendant and its goods and services are approved by, affiliated with, or otherwise connected to Plaintiff.

79.    Defendant's actions and infringements as alleged herein violate and injure Plaintiff's TROLLEY SQUARE Marks as well as Plaintiff's rights to its Marks.

80.    Accordingly, Plaintiff is entitled to all rights and remedies available under the Lanham Act and applicable federal law, including but not limited to injunctive, monetary, equitable, and/or such other and further relief as the Court deems appropriate.

### THIRD CAUSE OF ACTION:
### Dilution by Blurring under Section 43(c) of the Lanham Act

81.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully stated herein.

82.     Plaintiff's TROLLEY SQUARE Marks are distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act.

17

83. Plaintiff began using the TROLLEY SQUARE Marks in commerce no later than January 1, 1972, and has continually used the Marks in connection with its goods and services in the United States for more than 50 years.

84. Plaintiff's TROLLEY SQUARE Marks are a household name and recognizable throughout U.S. commerce.

85. Over the last half-century, Plaintiff has expended substantial time, money, and resources marketing, advertising and promoting its goods and services under the famous TROLLEY SQUARE Marks.

86. Upon information and belief, Defendant has made subsequent unauthorized use of the TROLLEY SQUARE Marks, or a derivative of the Marks, and creates a false designation of origin in commerce in connection with the distributions, sale, offering for sale, or advertising of goods and services in connection with "Trolley Corners."

87. Defendant's unlawful use of the TROLLEY SQUARE Marks, or a derivative of the Marks to offer commercial real estate leases to the public is in direct competition with Plaintiff.

88. Defendant's use of "Trolley" is in reference to Plaintiff and Plaintiff's TROLLEY SQUARE Marks.

89. Upon information and belief, Defendant unlawfully uses and depicts Plaintiff's TROLLEY SQUARE Marks to trade on Plaintiff's goodwill in the Marks and favorable reputation to increase their own sales and profits.

90. Upon information and belief, Defendant intended to create a false impression to the public that Defendant's goods and services were associated with Plaintiff.

18

91.     Upon information and belief, Defendant intended to use Plaintiff's TROLLEY SQUARE Marks for Defendant's own financial gain, particularly due to the fact that Defendant has not made basic efforts to differentiate itself from Plaintiff, such as by having its own domain name, Google Maps location, etc.

92.     Plaintiff's TROLLEY SQUARE Marks were distinctive and famous decades prior to Defendant's use in connection with commercial real estate and leasing.

93.     Accordingly, Plaintiff is entitled to all rights and remedies available under the Lanham Act and applicable federal law, including but not limited to injunctive, monetary, equitable, and/or such other and further relief as the Court deems appropriate.

## FOURTH CAUSE OF ACTION:
### Common Law Trademark Infringement / Unfair Competition

94.     Plaintiff incorporates by reference the allegations in the above paragraphs as if fully stated herein.

95.     By using the TROLLEY SQUARE Marks no later than 1972, when no other individual or business was using it, and by continuing to use the TROLLEY SQUARE Marks to promote, advertise, market and sell its goods and services, Plaintiff acquired and has the exclusive right to use the TROLLEY SQUARE Marks for leasing services, among other purposes and trade channels.

96.     Defendant has no rights in the TROLLEY SQUARE Marks and no license to use the TROLLEY SQUARE Marks.

97.     Nevertheless, Defendant, on or about June 13, 2024, used the TROLLEY SQUARE Marks in commerce for commercial real estate and leasing services without Plaintiff's authorization by:

a.  Utilizing the TROLLEY SQUARE Marks in the name of the Building;

b.  Promoting its goods and services on a third-party real estate listing website.

98.     Defendant's unauthorized use of the TROLLEY SQUARE MARKS already has caused actual confusion, and is likely to cause further confusion, mistake, or deception among the consuming public as to the affiliation or sponsorship of Defendant's competing trade channels and unlawfully trades on the goodwill that Plaintiff has built in the TROLLEY SQUARE Marks.

99.     Accordingly, Plaintiff is entitled to all rights and remedies available under Utah Code Ann. § 13-5a-103 and Utah's common law for Defendant's trademark infringement and unfair competition, including but not limited to (a) injunctive relief, (b) recovery of Defendants' profits, (c) punitive damages, (d) corrective advertising, and (e) attorneys' fees and costs.

**FIFTH CAUSE OF ACTION:**
**Deceptive Trade Practices Under Utah Code Ann. § 13-11a-3**

100.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully stated herein.

101.    By engaging in the aforementioned conduct alleged herein, Defendant has in the course of its business, vocation, or occupation:

a.  Caused a likelihood of confusion or misunderstanding among consumers as to the source, sponsorship, approval, or certification of Defendant's goods and services by unlawfully using Plaintiff's TROLLEY SQUARE Marks;

b.  Caused a likelihood of confusion or misunderstanding among consumers as to affiliation, connection, or association with Plaintiff; and

c.  Engaged in other conduct that qualifies under Utah law as a deceptive trade practice.

20

102. Defendant's acts and infringement as alleged herein have damaged and are likely to continue to injure Plaintiff, including the goodwill Plaintiff has (at great expense) accrued in its intellectual property and TROLLEY SQUARE Marks, as well as continue to confuse the public as to the association of Plaintiff and Defendant.

103. If not enjoined by the Court, Defendant will continue to engage in the deceptive trade practices alleged above, continuing to cause irreparable harm to Plaintiff and the goodwill and reputation Plaintiff has accrued in its TROLLEY SQUARE Marks.

104. Plaintiff is entitled to an injunction of Defendant's deceptive trade practices under Utah Code Ann. § 13-11a-4, as well as its damages and attorney fees, corrective advertising, and other remedies available thereunder.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment under the Common Law

105. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully stated herein.

106. Plaintiff owns the TROLLEY SQUARE Marks.

107. Plaintiff has invested substantial time, effort, and resources in developing the goodwill and reputation associated with its TROLLEY SQUARE Marks, which are recognized by consumers as identifying Plaintiff's goods and services.

108. Defendant unlawfully used Plaintiff's TROLLEY SQUARE Marks, or confusingly similar variations thereof, in connection with the marketing, promotion, and sale of Defendant's goods and services.

109. Through such unlawful use, Defendant improperly benefited from Plaintiff's reputation, goodwill, and efforts, without authorization or compensation.

110. Upon information and belief, Defendant derived revenues, profits, and other financial benefits as a direct and proximate result of its unauthorized use of Plaintiff's TROLLEY SQUARE Marks.

111. Equity and good conscience require that Defendant disgorges all profits, revenues, and other benefits obtained as a result of its wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enters judgment against Defendant and affords the following relief:

A. Preliminary and permanent injunctions to enjoin Defendant from further infringing upon Plaintiff's TROLLEY SQUARE Marks and other intellectual property, further diluting Plaintiff's Marks, further falsely associating Plaintiff with Defendant;

B. A court order compelling Defendants to destroy infringing items or property bearing the TROLLEY SQUARE Marks, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1118);

C. Awarding Plaintiff treble damages in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117) for the claims asserted under Section 43(a) of the Lanham Act (15 U.S.C. 1125(a), (c), and (d);

D. An accounting of Defendant's profits and an order to pay to Plaintiff all gains, profits, and advantages derived by Defendant's acts of unfair competition and infringement in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117).

E.    An award of damages in an amount to be proved at trial, but in no event less than $25,000,000.00, with pre- and post-judgment interest as permitted by law;

F.    An award of Plaintiff's attorneys' fees and costs as permitted by statute or other applicable law, including but not limited to 15 U.S.C. §§ 1116(a), 1117(a), and Utah Code Ann. §§ 13-11a-3, 13-5a-103; and

G.    Such other and further relief as the Court deems equitable or just under the circumstances.

## **JURY DEMAND**

In accordance with Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 23rd day of July, 2026.

STRONG & HANNI

*/s/ Scarlet R. Smith*
Scarlet R. Smith
Jordan T. Greenburg
*Attorneys for Plaintiff*

23

24